**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CHUKWUDI NJOKU,<br><br>Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC,<br><br>Serve: CSC-Lawyers Incorporating<br>Service Company<br>221 Bolivar Street<br>Jefferson City, Missouri 65101<br><br>Defendant. | Case No. 4:26-cv-1833<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Chukwudi Njoku, by and through undersigned counsel, states as follows for his Complaint against Defendant Charter Communications, LLC:

## NATURE OF THE ACTION

1. This is an action under Title I and Title V of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* (the "ADA"), arising from Defendant's failure to reasonably accommodate Plaintiff's disability, its termination of his employment because of his disability, and its retaliation against him for requesting accommodation.

2. After a spinal cord injury left Plaintiff using a wheelchair, Plaintiff asked to return to his computer- and telephone-based position with three accommodations: temporary remote work, dictation software, and a part-time schedule while he transitioned back to full-time work. Defendant's Human Resources Generalist told him in writing that "[i]t looks like we will be able to accommodate your request." Defendant's successor Human Resources Generalist later wrote

that the accommodation "isn't the hold-up," and that "[t]he hold-up is the business trying to figure out the type of work for Chudi will be given and how the work will be tracked." Defendant then terminated Plaintiff's employment on July 26, 2023.

**PARTIES**

3. Plaintiff Chukwudi Njoku is an individual residing in St. Louis County, Missouri.

4. Defendant Charter Communications, LLC ("Charter" or "Defendant") is a limited liability company that does business in the State of Missouri, including at a facility located in St. Ann, St. Louis County, Missouri, where Plaintiff was employed.

5. Charter has identified itself as Plaintiff's employer in the administrative proceedings described below. Plaintiff's Charge of Discrimination identified the respondent as "Charter Communications Inc." Charter appeared, responded, and participated in the administrative proceedings in the name of "Charter Communications, LLC." Plaintiff reserves the right to amend this Complaint to name any affiliated entity that is determined to have been his employer.

6. At all relevant times, Charter was an "employer" within the meaning of 42 U.S.C. § 12111(5)(A), engaged in an industry affecting commerce and employing fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. Upon information and belief, Charter employed more than 500 employees in each of twenty or more calendar weeks in the current or preceding calendar year.

7. At all relevant times, Charter was a "covered entity" within the meaning of 42 U.S.C. § 12111(2), and Plaintiff was an "employee" within the meaning of 42 U.S.C. § 12111(4).

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, and under 42 U.S.C. § 12117(a), which incorporates the enforcement provisions of 42 U.S.C. § 2000e-5(f)(3).

9. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as incorporated by 42 U.S.C. § 12117(a), because the unlawful employment practices alleged herein were committed in this District, the employment records relevant to those practices are maintained and administered in or are accessible from this District, and Plaintiff would have continued working in this District but for those practices.

10. Venue is proper in the Eastern Division because the events giving rise to Plaintiff's claims occurred in St. Louis County, Missouri.

## ADMINISTRATIVE PREREQUISITES

11. On or about January 19, 2024, Plaintiff filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), dual-filed with the Missouri Commission on Human Rights, alleging disability discrimination, failure to accommodate, and retaliation in violation of the ADA. The EEOC assigned the Charge No. 560-2024-01233.

12. On July 27, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights dismissing the Charge and notifying Plaintiff of his right to sue within ninety days of receipt.

13. Plaintiff files this Complaint within ninety days of his receipt of the Determination and Notice of Rights. All conditions precedent to the filing of this action have been performed, have occurred, or have been excused.

## THE PURPORTED ARBITRATION AGREEMENT

14. Charter contends that Plaintiff's claims are subject to a Mutual Arbitration Agreement and the associated Solution Channel Program Guidelines (together, the "Purported Agreement"), which Charter asserts Plaintiff accepted electronically during onboarding on or about June 3, 2020.

15. Plaintiff recalls completing routine electronic new-hire paperwork in or around June 2020. Plaintiff does not recall being presented with an arbitration agreement during onboarding, and does not recall reviewing, signing, acknowledging, or otherwise agreeing to one.

16. Before filing this action, Plaintiff, through counsel, asked Charter to produce the Purported Agreement. In response, Charter provided copies of the Mutual Arbitration Agreement and the Solution Channel Program Guidelines, neither of which bears Plaintiff's signature, and a printout of Plaintiff's "Policy Acknowledgments" that lists multiple onboarding documents by title and date with a "completed" status. Charter has not produced any document bearing Plaintiff's signature, or any record showing what was displayed to Plaintiff, what action he took with respect to the Purported Agreement, or how any electronic act was attributed to him.

17. Plaintiff searched his personal email for records of his onboarding with Charter and located no copy of the Purported Agreement and no copy or record of the documents he completed during onboarding. On October 23, 2026, Plaintiff attempted to access his Charter accounts to retrieve his onboarding records. Those attempts were unsuccessful.

18. Plaintiff denies that any agreement to arbitrate was formed between Plaintiff and Charter, and Plaintiff does not consent to arbitration. Charter bears the burden of proving that an agreement to arbitrate exists, and whether such an agreement was formed is a question for this Court.

19. Plaintiff specifically denies that he agreed to any provision of the Purported Agreement delegating questions of arbitrability to an arbitrator. Plaintiff specifically disputes that any electronic record on which Charter relies was his act or is attributable to him under § 432.240 RSMo, both as to the Purported Agreement as a whole and as to any delegation provision within it.

20. To the extent the making of the Purported Agreement is placed in issue, Plaintiff demands a jury trial on that issue under 9 U.S.C. § 4.

21. Plaintiff files this action within the ninety-day period prescribed by 42 U.S.C. § 2000e-5(f)(1), as incorporated by 42 U.S.C. § 12117(a).

22. Without waiving the foregoing, Plaintiff further contends that, if any agreement were found to exist, provisions of the Purported Agreement, including without limitation Section E (Time Limits) and Section K (Arbitration Costs), are unenforceable. Plaintiff reserves all arguments regarding the formation, validity, enforceability, and scope of the Purported Agreement and of each of its provisions.

23. In the alternative, should the Court compel arbitration of any claim asserted herein, Plaintiff requests that this action be stayed rather than dismissed. 9 U.S.C. § 3; *see Smith v. Spizzirri*, 601 U.S. 472 (2024).

## FACTUAL ALLEGATIONS

### <u>A. Plaintiff's Employment</u>

24. Charter hired Plaintiff on or about June 12, 2020. Plaintiff's most recent position was Representative 1, Provision and Activation Center ("PAC"), which Charter also refers to as PAC Coordinator I, assigned to Charter's St. Ann, Missouri facility.

25. According to Charter's written job description, the PAC position is responsible for resolving residential and simple commercial order exceptions, including processing inbound and outbound customer calls, researching and resolving provisioning, Local Number Portability, and E911 database exceptions using Charter's computer systems, and handling escalations from internal teams.

26. In the Essential Job Functions and Health Care Provider Questionnaire that Charter prepared for Plaintiff's position, Charter identified reading, sitting, speaking, typing, seeing, and concentrating as "frequent" requirements of the job; identified bending, lifting up to ten pounds, standing, and walking as "rarely" required; and identified driving, climbing, kneeling, and reaching above shoulder level as "never" required.

27. Charter's written job description for the PAC position, bearing a revision date of April 28, 2023, does not identify in-person attendance, in-center work, or in-person training among the position's duties or required qualifications. Its "Physical Requirements" section is blank.

28. The essential functions of the PAC position, as described by Charter, are performed using a computer and telephone and do not require Plaintiff's physical presence at a particular location.

29. During the COVID-19 pandemic, Charter permitted Plaintiff to perform his job remotely. Plaintiff successfully performed his job remotely during that period without needing to report to a Charter facility, and Charter evaluated his performance while he worked remotely.

**B. Plaintiff's Disability**

30. On or about April 14, 2022, Plaintiff was seriously injured in a motor vehicle accident. He sustained a traumatic cervical spinal cord injury that required surgical fusion of his cervical spine and left him partially paralyzed. Since the accident, Plaintiff has used a wheelchair and a mobility scooter.

31. Plaintiff's spinal cord injury is a physical impairment that substantially limits one or more of his major life activities, including walking, standing, performing manual tasks, lifting, and the operation of his neurological and musculoskeletal functions. Plaintiff is an individual with a disability within the meaning of 42 U.S.C. § 12102(1).

32. Charter has known of Plaintiff's impairment and its effects since April 2022, when Plaintiff requested a leave of absence through Charter's third-party leave administrator.

33. Charter approved leave under the Family and Medical Leave Act from April 15, 2022 through July 7, 2022, and thereafter extended Plaintiff's leave of absence while he recovered.

34. On or about August 10, 2022, while still on leave, Plaintiff asked Charter whether dictation software would be available to assist him with typing when he returned to work. A Charter Human Resources Manager reported that Charter's information technology staff said "there is not any type of software available within Charter," and that Plaintiff "and his doctor may have to think about potential solutions or products."

35. Upon information and belief, Charter did not investigate whether commercially available speech-recognition or dictation software, or any other assistive technology, could be obtained for Plaintiff's use.

**C. Plaintiff's Request for Accommodation**

36. On or about February 13, 2023, Plaintiff completed Charter's Employee Job Accommodation Request form, requesting the following accommodations to enable him to perform the essential functions of his position: (a) working from home; (b) dictation software to aid with typing; and (c) working part-time as he transitioned back to full-time work.

37. On the request form, Plaintiff stated that the anticipated duration of the requested accommodations was "[n]ot sure, hopefully no longer than 3 months," and that his health care

providers believed he could perform the essential functions of his job with the requested accommodations.

38. Plaintiff was assisted in his return-to-work efforts by Jeff Strasburg, a Program Coordinator and Employment Specialist with MERS Goodwill, who communicated with Charter on Plaintiff's behalf with Plaintiff's authorization.

39. On or about March 7, 2023, Charter's ADA Coordinator sent a letter and a Health Care Provider Questionnaire to Plaintiff's treating provider, SSM Health Day Institute.

40. On March 9, 2023, Charter HR Generalist Katrena Boland wrote to Plaintiff:

> "I'm sorry I wasn't able to reach you over the phone, but I have some great news. It looks like we will be able to accommodate your request, however, we will need your doctor to fill out the attached form in order to get your accommodation approved and equipment ordered."

41. Ms. Boland requested that the completed paperwork be returned by March 28, 2023.

42. On March 10, 2023, Ms. Boland wrote to Mr. Strasburg that "[o]nce we receive that paperwork we can start the approval process and our corporate partners will get the equipment together." The same day, Mr. Strasburg wrote to Ms. Boland confirming the part-time schedule Plaintiff and Ms. Boland had discussed: twenty hours per week, worked in five-hour shifts on Tuesdays, Thursdays, Saturdays, and Sundays.

43. Plaintiff asked his treating provider at SSM Health Day Institute to complete and transmit the paperwork to Charter. Plaintiff believed in good faith that the paperwork had been sent on or about March 27, 2023.

44. On March 28 through March 30, 2023, Ms. Boland advised Mr. Strasburg and Plaintiff that Charter had not received the paperwork, and asked that it be faxed to her directly.

45. On April 6, 2023, a representative of SSM Health confirmed to Plaintiff in writing: "I connected with Katrena and sent her the paperwork!"

46. Charter did not terminate the accommodation process because of the timing of the paperwork. Rather, as Charter has acknowledged, Charter "continued to engage with Complainant in the interactive process" after March 28, 2023.

**D. Charter's Remote Work Program**

47. On or about April 7, 2023, while Plaintiff's accommodation request was pending, Charter issued "Customer Service Remote Work Guidelines" governing temporary remote work assignments for representatives.

48. Under the guidelines, a representative was eligible for a new remote assignment only if, among other things, the representative had a "[t]op 50% scorecard" over the preceding three months, at least three eligible scorecards, and was "[a]ble and willing" to work a full shift in center at least once per month, to work in center if a technical issue lasted beyond one hour, and to complete in-center training when required, including "retraining after an extended Leave of Absence."

49. The guidelines provided that up to thirty percent of productive agents at each site could be placed on remote assignment.

50. The guidelines are a general policy governing discretionary remote work for non-disabled employees. They do not address, and do not purport to limit, remote work provided as a reasonable accommodation for a disability.

51. Because Plaintiff had been on medical leave since April 2022, he had no recent scorecards and could not satisfy the guidelines' performance-eligibility criteria regardless of his ability to perform the job.

52. Upon information and belief, Charter did not consider whether the in-center requirements of the guidelines, including in-person retraining, could be modified, waived, or performed remotely as a reasonable accommodation for Plaintiff, and did not consider whether any in-center requirement was an essential function of the PAC position as opposed to a condition of the discretionary remote work program.

**E. The Breakdown of the Interactive Process and Plaintiff's Termination**

53. In or about May 2023, Ms. Boland left Charter, and HR Generalist LaShonda Rice assumed responsibility for Plaintiff's accommodation request.

54. Plaintiff and Mr. Strasburg repeatedly sought updates from Ms. Rice, who became unresponsive to their communications.

55. On June 29, 2023, Mr. Strasburg wrote to Ms. Rice offering to help identify "accommodations for Chudi that also work for Charter." Ms. Rice responded the same day:

> "Unfortunately, I don't have an update. I don't need any help figuring out an accommodation, that isn't the hold-up. The hold-up is the business trying to figure out the type of work for Chudi will be given and how the work will be tracked. I will reach out to you once we are ready to move forward."

56. Neither Ms. Rice nor anyone else at Charter had previously informed Plaintiff that the tracking of remote work was an obstacle to his accommodation. Charter had evaluated Plaintiff's work while he worked remotely during the COVID-19 pandemic.

57. On July 6, 2023, Ms. Rice wrote to Mr. Strasburg that "[t]his matter has gone back to the GVP to look over again."

58. Upon information and belief, Charter did not ask Plaintiff or his providers for any additional information, did not propose any alternative accommodation, did not offer remote or accessible retraining, did not offer a temporary or trial period of remote work, did not identify or explore assistive technology, and did not consider reassignment to a vacant position.

59. On or about July 25, 2023, after Plaintiff again requested an update, Ms. Rice informed Plaintiff by telephone that Charter was enacting a return-to-office policy; that remote work was available only to employees who performed well in the office; that because Plaintiff could not come into the office to be evaluated, he could not be permitted to work remotely; and that his employment was being terminated.

60. Charter terminated Plaintiff's employment effective July 26, 2023, citing his inability to return to work in the office.

61. Charter never asserted to Plaintiff that the requested accommodations would impose an undue hardship on the operation of its business.

62. At the time of his termination, Plaintiff was a qualified individual within the meaning of 42 U.S.C. § 12111(8): he possessed the skills, experience, and training required for the PAC position, which he had held and performed, including remotely, and he could perform its essential functions with reasonable accommodation.

63. Plaintiff could have been reasonably accommodated but for Charter's lack of good faith in the interactive process.

64. Plaintiff earned approximately $20.00 per hour at Charter. As a direct result of Charter's conduct, Plaintiff has lost wages and employment benefits, and has suffered emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

## COUNT I

### Failure to Accommodate in Violation of the ADA, 42 U.S.C. § 12112(a), (b)(5)(A)

65. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

66. Plaintiff is a qualified individual with a disability.

67. Charter knew of Plaintiff's disability and of his physical limitations.

68. Plaintiff requested reasonable accommodations, including temporary remote work, dictation software, and a temporary part-time schedule.

69. Charter failed to make a good-faith effort to assist Plaintiff in seeking accommodation, failed to engage in the interactive process in good faith, and failed to provide any reasonable accommodation.

70. Plaintiff could have been reasonably accommodated but for Charter's lack of good faith.

71. Providing the requested accommodations, or an alternative reasonable accommodation, would not have imposed an undue hardship on the operation of Charter's business.

72. By the conduct described above, Charter discriminated against Plaintiff in violation of 42 U.S.C. § 12112(a) and (b)(5)(A).

73. Charter acted with malice or with reckless indifference to Plaintiff's federally protected rights.

74. As a direct and proximate result of Charter's conduct, Plaintiff has suffered and will continue to suffer the damages described above.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant on Count I and award the relief set forth in the Prayer for Relief below.

## COUNT II

### Disability Discrimination (Discharge) in Violation of the ADA, 42 U.S.C. § 12112(a)

75. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

76. Plaintiff is a qualified individual with a disability.

77. Charter terminated Plaintiff's employment because of his disability, including because his disability prevented him from working in Charter's office without accommodation.

78. Charter's stated reason for terminating Plaintiff's employment, his inability to return to work in the office, is itself a consequence of his disability and of Charter's refusal to accommodate it, and is a pretext for discrimination.

79. By the conduct described above, Charter discriminated against Plaintiff in the discharge of his employment in violation of 42 U.S.C. § 12112(a).

80. Charter acted with malice or with reckless indifference to Plaintiff's federally protected rights.

81. As a direct and proximate result of Charter's conduct, Plaintiff has suffered and will continue to suffer the damages described above.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant on Count II and award the relief set forth in the Prayer for Relief below.

## COUNT III

### Retaliation in Violation of the ADA, 42 U.S.C. § 12203(a)

82. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

83. Plaintiff engaged in protected activity by requesting reasonable accommodation for his disability and by continuing to pursue that request with Charter, both directly and through his authorized representative, from February 2023 through July 2023.

84. Charter terminated Plaintiff's employment while his accommodation request remained pending and in response to his continued requests for a decision on that request.

85. Plaintiff's protected activity was a but-for cause of the termination of his employment.

86. By the conduct described above, Charter retaliated against Plaintiff in violation of 42 U.S.C. § 12203(a).

87. As a direct and proximate result of Charter's conduct, Plaintiff has suffered and will continue to suffer the damages described above.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant on Count III and award the relief set forth in the Prayer for Relief below.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant, and award:

(a) Back pay, lost employment benefits, and other lost compensation, with prejudgment interest;

(b) Reinstatement with reasonable accommodation or, in lieu of reinstatement, front pay;

(c) Compensatory damages for emotional distress, humiliation, inconvenience, and loss of enjoyment of life, and for future pecuniary losses, under 42 U.S.C. § 1981a(a)(2);

(d) Punitive damages under 42 U.S.C. § 1981a(a)(2) and (b)(1) on Counts I and II;

(e) Reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 12205;

(f) Post-judgment interest as allowed by law; and

(g) Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable. Plaintiff makes this demand without waiver of, and expressly preserves, his position that any contractual waiver of the right to a jury trial is unenforceable.

Respectfully submitted,

**DONNER APPLEWHITE, ATTORNEYS AT LAW**

*/s/ Christopher J. Herman*

Christopher J. Herman, #75841
5205 Hampton Avenue
Saint Louis, Missouri 63109
Telephone: (314) 293-3525
Facsimile: (888) 785-4461
chris.herman@da-lawfirm.com

Attorney for Plaintiff Chukwudi Njoku